Judge Marshall
delivered the Opinion of the Court.
Judge Ewing had not taken his seat on the bench when the cause was argued, and took no part in the decision.
The application of Elliston to set aside the judgment against him, for the purpose of changing the venue, though made immediately after the rendition of the judgment by default, and supported by the order of a neighboring Judge, was, like other incidental motions, addressed to the sound discretion of the Court. And we do not perceive, either in the affidavit on which the order was made, or in that which professed to state the reasons why it had not been previously presented, any convincing evidence, that there was, in this instance, an abuse of discretion in overruling the application.
It would be going far to say that it is the duty of the Circuit Court, under any circumstances, to set aside a judgment for the mere purpose' of either giving an opportunity of applying for a change of venue, or of giving effect to an order for a change which may have been previously obtained. If there has been any irregularity or injustice; or if a party, without fault or negligence on his part, has been deprived of an opportunity of making his defence, or supporting his cause of action-, and shows, with reasonable certainty, that he can do the one or the other upon another trial, this may be good cause for giving him the opportunity: and when, for any of these causes, the judgment is opened,, he may, if he have ground, obtain a change of venue. In the present case, the defendant has shewn no ground for setting aside the judgment, except the order for a change of venue, with the affidavit on which it was founded, and an additional affidavit setting forth the *100 reasons why the order had not been filed, or otherwise made known to the court, before the judgment was rendered. But he has disclosed no defence to the action: of course, has shewn no probability of sustaining one upon another trial, nor any thing from which it can be inferred that he had sustained, or could possibly have sustained injustice in the proceedings which had taken place. We are therefore of opinion, that he presented no sufficient ground for setting aside the judgment.
It is the custum here, for courts, and clerks, ex officio, to take notice of credits indorsed on obligations,andenter judgments as subject thereto; but it has never been decided that to omitit, would render the judg’t erroneous. And this court is not disposed to extend the practice to casesnot within the established usage.
An objection, however, is taken to the judgment, in this court, which was not moved in the court below. The note is for thirteen hundred dollars, and the judgment is for that sum: but below the note and on the face of the paper, is the following memorandum, viz; “dis'id for ‡ 1033” — which is alleged to mean, that the note was discounted for @1033 only, and to show, that this sum formed tbe exact consideration on which the note was founded, and was the exact amount to which the plaintiffs in the action were entitled. On the ground of this memorandum and its explanation, it is contended that the judgment should have been rendered for the smaller sum, or that, if rendered for the sum expressed in the body of the note, the difference between the two sums should have been credited at the foot of the judgment, as is usual in case of payments endorsed on the note; and that, as neither of these was done, the judgment is erroneous.
But although this explanation of the memorandum may be correct, we do not concur in the conclusion that it was erroneous to render judgment for the larger sum, without entering a credit for the difference. It cannot be doubted, that the declaration on the note, in a common action of debt, must have gone for the sum expressed in the body of the note: there is no express promise to pay any other sum. The memorandum may shew the consideration of the debt, and that only a part of it is equitably due; but the sum promised to be paid is, in legal language, the debt, and that is to be recovered, unless barred in whole or in part by some plea authorized by law. Admitting, then, that the memorandum shows, that for a part of the debt there is a want of consideration — this could *101 not have been pleaded at law, and, a fortiori, could not properly affect the judgment without plea.
Nor,as we conceive, was the Court, or the Clerk,bound, ex officio, to notice the memorandum, and give effect to their interpretation of it, by entering a credit at the of the judgment. The practice which has long prevailed in this country, of entering such credits, extends only to the case of payments endorsed upon the writing declared on; and even with regard to these, we know of no case in which it has been decided that the mere omission, ex officio, to enter a credit, even for a payment endorsed upon the note, is error for which the judgment should be reversed. If, however, we were disposed to go that far, in confirmation of a long established and salutary practice, we are not disposed, if we had the power, to require the extension of the practice to cases not coming within the already existing usage.
An attempt on the part of the plaintiffs in the action, to coerce more upon the judgment than is justly due? would undoubtedly afford proper ground for the interposition of the Chancellor. But although the judgment may be inequitable, it is not in our opinion erroneous; and must therefore be affirmed.